IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM BARRACLOUGH            )
and FANG YAN,                  )
                               )
Plaintiffs,                    )
                               )
        v.                     )        Civil Action No. 23-654
                               )        Judge Nora Barry Fischer
ANIMAL FRIENDS, INC.,          )
JUSTIN GALVIN,                 )
and KRISTA KOONTZ,             )
                               )
Defendants.                    )

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

In this case, Plaintiffs William Barraclough and Fang Yan bring civil rights and tort claims against Defendants Animal Friends, Inc., Justin Galvin, and Krista Koontz arising from the search and seizure of dogs from a residence they own in Crescent Township, Pennsylvania.  (Docket No. 14).  Presently before the Court is a Motion to Dismiss brought by Defendants pursuant to Federal Rules of Civil Procedure 12(b)(6) and Plaintiffs' opposition thereto.  (Docket Nos. 15, 21).  The motion has been fully briefed and the parties have not requested oral argument.  (Docket Nos. 14-16; 21-22; 24).  After consideration of the parties' arguments, and for the following reasons, Defendants' Motion to Dismiss will be granted.

### II.   FACTUAL BACKGROUND

The following facts come from Plaintiffs' Amended Complaint. (Docket No. 14).  The Court assumes these allegations are true for purposes of the present motion.  *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Plaintiffs are husband and wife.  (Docket No. 14 ¶ 5).  Barraclough is a United States citizen

while Yan is of Asian descent and a permanent resident of the United States.  (*Id*. ¶¶ 5-6).  A little over a year ago, Plaintiffs were using a vacant property they owned in Crescent Township, Pennsylvania to house nine of their dogs.  (*Id*. ¶¶ 10, 12).  Plaintiffs visited the Crescent property at least once a day to feed, bathe, and care for them.  (*Id*. ¶ 14).  During this period, Galvin and Koontz were employed as humane officers by Animal Friends, Inc., a Pennsylvania non-profit organization.  (*Id*. ¶¶ 8-9).

On April 29, 2022, Plaintiffs found a notice posted at the Crescent property which instructed them to contact Galvin and/or Koontz.  (*Id*. ¶ 16).  Plaintiffs followed these instructions, and shortly thereafter, Galvin and Koontz arrived to inspect their property and dogs.  (*Id*. ¶¶ 17-18).  Upon completing the inspection, Galvin and Koontz told Plaintiffs to make appointments for the dogs to be groomed and vaccinated, and to clean their living areas.  (*Id*. ¶ 19).  When the officers returned the next day, Plaintiffs presented proof that they had complied with the officers' instructions.  (*Id*. ¶¶ 21-22).  However, Galvin and Koontz demanded that Plaintiffs remove the dogs from the property within the next two hours, which Plaintiffs were unable to accomplish within that time period.  (*Id*. ¶¶ 23-24).  Later that day, Galvin obtained a search warrant for the Crescent property from a magistrate judge.  (*Id*. ¶ 25; *see also* Docket No. 15-1).

The affidavit of probable cause Galvin submitted alongside the search warrant application is central to this action.  (Docket No. 15-1).  Plaintiffs allege that Galvin's affidavit contained false information, such as the dogs were "covered in feces" and stained with urine, and that it omitted exculpatory evidence regarding Plaintiffs' compliance with the officers' instructions.  (Docket No. 14 ¶¶ 26, 28).  According to Plaintiffs, Galvin was aware that the affidavit was inaccurate because it was inconsistent with what he had observed at the Crescent property earlier that day.  (*Id*. ¶¶ 27, 29).

While the officers were executing the search warrant, Yan requested more time to try and rehome the dogs. Galvin responded, "I didn't bring you here," and "I don't care what they do in China." (*Id*. ¶¶ 33-34). Galvin and Koontz seized five of the dogs and transported them to Animal Friends. (*Id*. ¶¶ 37, 40). Separately, on July 29, 2022, Galvin filed multiple charges of animal neglect against both Plaintiffs at the local magistrate office. (*Id*. ¶ 45). The charges were ultimately dismissed on September 29, 2022. (*Id*. ¶ 49). The dogs have not been returned to Plaintiffs. (*Id*. ¶ 41).

## III.    PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on April 21, 2023. (Docket No. 1). The parties stipulated that the deadline for Defendants' Answer be extended to August 10, 2023. (Docket No. 13). In the interim, Plaintiffs submitted an Amended Complaint on June 30, 2023. (Docket No. 14). Defendants challenged the Amended Complaint by filing this Motion to Dismiss and supporting brief on August 10, 2023. (Docket Nos. 15, 16). Thereafter, on September 7, 2023, Plaintiffs responded with their Brief in Opposition. (Docket No. 21). Defendants replied on September 21, 2023. (Docket No. 22). Plaintiffs submitted their Sur-Reply Brief on October 3, 2023. (Docket No. 24). Within their briefing, Plaintiffs withdrew certain claims, and the Court issued an order dismissing Yan's equal protection claim against Koontz at Count II and Barraclough's malicious prosecution claim against Galvin at Count III. (Docket Nos. 21 at n.1; 25). As Defendants' motion has been fully briefed, it is now ripe for disposition.

## IV.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   Plausibility exists somewhere between "possible" and "probable."   The former necessitates factual allegations that are "more than merely consistent with a defendant's liability."   *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).   But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1937 (citations omitted).

Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).   In general, a trial court "may not consider matters extraneous to the pleadings."   *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).   However, courts may also consider "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."   *Pinkney v. Meadville, Pennsylvania*, 2022 WL 1616972, at *2 (3d Cir. 2022) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)).

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss.   *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022).   First, the court must set out the elements of the plaintiff's claim; second, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" such that they amount to nothing more than mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]"   *Id.*

at 327-328 (alteration, internal quotation marks, and citations omitted). And, courts must draw all reasonable inferences in favor of the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-791 (3d Cir. 2016).

## V.   DISCUSSION

The remaining claims in Plaintiffs' Amended Complaint include their federal claims under 42 U.S.C. § 1983 alleging an unlawful search and seizure in violation of the Fourth Amendment of the United States Constitution and Yan's equal protection claim against Galvin. (Docket No. 14 at 7-11). Plaintiffs also asserted state law causes of action including trespass, trespass to chattel, and intentional infliction of emotional distress against the Defendants. (*Id*. at 13-17). Defendants move to dismiss all counts for failure to state a claim upon which relief may be granted. (Docket Nos. 15, 16, 22). Plaintiffs counter that they have met the federal pleading standards and that the case should be permitted to move beyond the pleadings and into the discovery phase. (Docket Nos. 21, 24). While Defendants lodge several arguments in support of their motion, the Court focuses on the insufficiency of Plaintiffs' § 1983 claims as those issues are dispositive. Then the Court explains its declination to exercise supplemental jurisdiction over the remaining state law claims. The Court's rationale follows.

### a.   Section 1983

Title 42 Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. A plaintiff bringing a claim under § 1983 must demonstrate that he suffered a deprivation of some federal right and "that the person who has deprived him of that right acted under color of state or territorial law." *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980)).

First, Plaintiffs contend that Galvin's affidavit of probable cause contained false information and lacked exculpatory evidence such that the search warrant and its subsequent execution were rendered unlawful. (Docket No. 14 at 7-9). Second, Plaintiffs claim that Galvin made discriminatory statements to Yan which demonstrate that he obtained a search warrant and later charged her with multiple counts of animal neglect based on her race and/or national origin. (*Id.* at 9-11). Although undisputed here, Plaintiffs contend, and this Court agrees, that Galvin and Koontz were acting under state law when they obtained and executed the search warrant, and when Galvin charged Yan with animal neglect. *See* 22 Pa.C.S. § 3708(a). But, to complete the first phase within the three-step framework, we now turn to the federal rights at issue, beginning with the elements of a § 1983 claim challenging probable cause.

### i. Plaintiffs' Fourth Amendment Challenge: Probable Cause

In situations where, as here, a neutral magistrate found probable cause in connection with a warrant application, Plaintiffs must make two showings: "first, that the officer, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)) (alterations and internal quotation marks omitted). An omission is made with reckless disregard if the officer withheld "a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson*, 212 F.3d at 788 (quoting *United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir. 1993)) (alterations and internal quotation marks omitted). With regards to a false statement, "recklessness is not measured by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id.* Therefore, a false assertion "is

6

made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quoting *United States v. Clapp,* 46 F.3d 795, 801 n.6 (8th Cir. 1995)) (internal quotation marks omitted).

Plaintiffs contend that Galvin's affidavit of probable cause contained "false statements that the dogs on the property were 'covered in feces' and had 'urine staining.'" (Docket No. 14 ¶ 26). Plaintiffs further allege that the affidavit omitted "exculpatory evidence including, but not limited to, information stating that the Plaintiffs provided Defendants Galvin and Koontz with proof that they had complied with the Defendants' instructions to clean the areas of the property where the Plaintiffs housed the dogs, to make veterinarian appointments, and to groom the dogs." (*Id.* ¶ 28).

Accepting these allegations as true and construing them in the light most favorable to Plaintiffs, this Court will assume that the dogs were neither covered in feces nor urine-stained, and that Galvin observed this when he returned to the Crescent property the following day. (Docket No. 14 ¶¶ 27, 29). This Court will also accept that Galvin made these false statements and omissions with at least a reckless disregard for the truth when he applied for a warrant. (*Id.* ¶ 31).

However, the inquiry does not end there. When determining whether assertions or omissions were material or necessary to the finding of probable cause, courts must "excise the offending inaccuracies and insert the facts recklessly omitted from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 789) (internal quotation marks omitted). The affidavit must undergo "a literal, word-by-word" reconstruction. *Id.*

Applying these instructions to Plaintiffs' allegations, the reconstructed affidavit provides, as follows:

Your affiant, Officer Justin A. Galvin, has been a Humane Society Police Officer since October 5th 2020. Your affiant has received the required training from the Pennsylvania Department of Agriculture regarding the laws of the Commonwealth, Title 18, Chapter 55, Subchapter B, Cruelty to Animals. Your affiant is employed by Animal Friends, ORI # PA002PP10, and was sworn in in Allegheny County Court of Common Please by the Honorable Edward J. Borkowski on January 25th 2020.

Friday, 04/22/2022 at 09:14 hours, witness one left a brief voicemail asking for a call back. Animal Friends Dispatcher Polka returned the call (11:27 a.m.), and witness one, who's [sic] identity is known to the affiant, told her about the concern for several dogs in the garage at [address omitted] in CRESCENT TOWNSHIP. Witness one lives nearby and usually hears the dogs barking from the garage when she walks her dogs by there. She conveyed that other neighbors also have concerns and keep telling her about it so she is calling it in. From what witness one understands, WILLIAM BARRACLOUGH lives in MOON TOWNSHIP, had too many dogs there so he bought this place in CRESCENT TOWNSHIP and moved some of his dogs down here. He doesn't come daily to check on them, they do not get fed daily, and are not let outside. When he does stop by, he drives around to the back and enters using the man-door in the rear/basement. Witness one stated any postings left should be placed on that door. It is a long corner lot and the back of it faces Anderson St. Witness one never sees the dogs, she hasn't been inside the garage, but she regularly hears them barking and screaming. Witness one said there are never any lights on anywhere and the dogs are always in the dark garage. Witness one was last there yesterday and continues to hear the dogs. Witness one conveyed that there was a renter on the top floor who moved out because of the noise and the stench.

Friday 04/29/2022 at 11:11 hours, Officer Koontz and Galvin arrived at [address omitted]. Officers attempted to make contact with the homeowner to no avail. When Officers approached the front porch the odor of unsanitary conditions, which consists of ammonia and feces emitting from the residence [sic]. Officers were able to see one (1) doodle mix type dog via a window to the right side of the door and hear additional dogs in the residence. Officers prepared a posting and posted the front door at 11:21 hours, requesting a call from the owner within eight (8) hours.

Officers then proceeded to the rear of the residence to the door the complainant stated that the owner commonly uses. As officers were preparing to post the door, a clear view through the window was

available. Officers were able to see three (3) husky type dogs in one crate and two (2) husky type dogs in a second crate. Additionally, each dog appeared to be [] wet. On the floor wood chips and feces were present, along with dishes for food and water that were empty. Officers posted this door with the same information contained on the posting on the front door.

Friday 04/29/2022 at 12:30 hours, Animal Friends Humane Investigations received a call from Bill Barraclough in regards to the posting on the door. Barraclough stated that there were approximately ten (10) dogs in [sic] the property. Bill stated that they were mostly Alaskan Malamutes. When asked why the dogs were being locked in the basement of a house that no one resides in, Barraclough stated that the dogs were kept there because he couldn't keep them at his home on Emma Drive in Moon Township. When asked what the purpose of having this large amount of dogs were [sic], Barraclough stated that they may breed them in the future but haven't done it yet. When asked if Officers could proceed back to the residence Barraclough stated that he would meet Officers there to allow the conditions to be observed.

Friday 04/29/2022 at 13:30 hours, Officer arrived back at [address omitted]. Officers met with Barraclough as well as Fang Yan, his wife. Barraclough allowed Officers to enter the garage where a total of seven (7) dogs were being house [sic]. The strong odor of ammonia was present as the door was opened to the garage. Once in the garage Officers noticed two (2) Alaskan Malamutes in one fenced kennel, One (1) Malamute in a second fenced kennel, Two (2) Malamutes in a third fenced kennel and two (2) Afghan Hound [sic] in a fourth fenced kennel. [] Officers along with Barraclough and Yan proceeded to the first floor of the residence were [sic] one (1) Poodle was in a crate in the kitchen and one (1) Doodle in a crate [sic] in the living room. [] Based on my training and experience I was able to observe all the dogs with-in [sic] the residence [] were not being groomed as needed. I also was able to verify that the ammonia levels were high, as when entery [sic] was made into the garage, my eyes and throat began to burn immediately with coughing.

Ammonia is irritating and corrosive to your respiratory system. If there's a high concentration of the chemical in the air, you can feel it burn your nose, eyes, and throat immediately. When it's severe, that burning can spread to your respiratory tract. Any kind of irritation can lead to the destruction of your airways or other senses, including burns to the skin. Over time, this may cause distress or even failure of one or more of the sensory systems. Even inhaling

lower amounts can be problematic. You will find yourself coughing and feeling irritation in your nose, eyes and throat. Because of the strong odor, the smell is more or less warning you to stay away from it. Long exposure will cause raspatory [sic] fatigue or even adaptation to the scent.

Barraclough asked what the issues were. Officers explained about the unsanitary conditions, as well as the [] urgent need for grooming. Barraclough and Yan were given a notification of violation, giving till 09:00 hours on 4/30/2022 to make improvements to the residence. These improvements included: improvement to the kennel cleanliness, unsanitary conditions, and ammonia levels. Appointments for the dogs at a licensed veterinarian or provide up to date vet records, and grooming appointments for all dogs to be scheduled within one (1) week.

Officers were then escorted to the first floor of the residence, where it was observed that the carpet in the living room had been removed. Officers once again were overcome by the smell of ammonia. Once again, an ammonia tests [sic] were conducted, one (1) in the living room and one (1) in the kitchen. Both tests were in the range of fifty (50) parts per million. Officers exited the residence and attempted to speak with Barraclough and Yan about the issues with the unsanitary conditions. Barraclough stated that he could potentially have some people take the dogs and started making phone calls. Barraclough then stated that his one son will take one (1) dog and a friend may take another but it was not guaranteed. Barraclough stated that he intends to take the doodles to the vet and get them rabies shots and board them at a local kennel. Barraclough could not provide a guaranteed plan for the removal of the remaining dogs. [1]

Officers request to seize evidence pertaining to veterinary care of the animals including medications and specialty [sic] food, inorder [sic] to provide contined [sic] care for any pre-diagonised [sic] medical conditions.

Based on my training and experience I believe that there is probable cause to search for and seize the animals at [address omitted]. These animals are being neglected by living in unsanitary shelters, being exposed to high ammonia levels, and the lack of proper grooming.

---

[1] [Insert the omitted exculpatory evidence regarding Plaintiffs' compliance with the officers' instructions here. *See* Docket No. 14 ¶ 28. ("[I]nformation stating that the Plaintiffs provided Defendants Galvin and Koontz with proof that they had complied with the Defendants' instructions to clean the areas of the property where the Plaintiffs housed the dogs, to make veterinary appointments, and to groom the dogs.").]

(Docket No. 15-1).   The magistrate judge found probable cause that Plaintiffs violated Pennsylvania's animal neglect statute, which states that a person who has a duty of care to an animal commits an offense if he fails to provide for the animal's basic needs.   18 Pa.C.S. § 5532(a). Specifically, the magistrate judge found probable cause that Plaintiffs failed to provide access "to clean and sanitary shelter and protection from the weather" which sufficiently "permit[s] the animal to retain body heat and keep the animal dry[,]" and necessary veterinary care.   18 Pa.C.S. §§ 5532(a)(2) and (3).

When a court reviews a magistrate judge's determination of probable cause, it "must determine only that the magistrate judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant."   *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed. 2d 527 (1983)).   And, in determining whether a "substantial basis" existed, courts must keep in mind that the magistrate's task is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."   *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.   Therefore, to uphold the probable cause determination here, this Court must determine that the revised affidavit still provides a substantial basis for finding that evidence of animal neglect would be found at the Crescent property.   Finally, this reviewing Court must remember that "the fact that there exists a less intrusive method of achieving the government's goal is not relevant to the Court's reasonableness analysis under the Fourth Amendment."   *Wilcher v. City of Wilmington*, 139 F.3d 366, 377 (3d Cir. 1998).

After reviewing Galvin's revised affidavit in the light most favorable to Plaintiffs, this Court finds a substantial basis for the magistrate judge's determination that Plaintiffs violated both

18 Pa.C.S. § 5532(a)(2) and 18 Pa.C.S. § 5532(a)(3).  *See Gates*, 462 U.S. at 238.  At the outset, the affidavit provides that Galvin: had been a humane society officer for approximately a year and a half; had been trained on the applicable animal cruelty statute by the Pennsylvania Department of Agriculture; was employed by Animal Friends; and had been sworn into the Allegheny County Court of Common Pleas by Judge Borkowski.  (Docket No. 15-1 at 3); *see Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 559 (E.D. Pa. 2011) (upholding a warrant issued by a magistrate judge based on a humane society officer's affidavit of probable cause, which reviewed, *inter alia*, the officer's training, qualifications, and employment).

With respect to § 5532(a)(2), the Pennsylvania Superior Court has explained that "[t]he plain language of subsection two of the animal neglect statute requires those with a duty to care for animals to assure access to [...] 'clean and sanitary shelter.'"  *Commonwealth v. Arthur*, No. 752 MDA 2022, 2023 WL 5543740, at *5 (Pa. Super. Ct. Aug. 29, 2023) (quoting 18 Pa.C.S. § 5532(a)(2)).  The Pennsylvania Superior Court has further recognized that keeping multiple large dogs in a small area without access to "sufficient food, water or ventilation" poses a danger to the animals' basic needs.  *Commonwealth v. Tomey*, 2005 PA Super 321, 884 A.2d 291, 295 (Pa. Super. Ct. 2005).  Similarly, the U.S. District Court for the Middle District of Pennsylvania found probable cause that a violation of the statute was present based on observations that there was "trash strewn about the property" and "feces everywhere" as such a description "connotes squalor and conditions that violate an animal's access to clean and sanitary shelter."  *Crooker v. Tessitore*, No. 3:20-CV-01695, 2022 WL 19837844, at *7 (M.D. Pa. July 22, 2022), *report and recommendation adopted*, No. CV 3:20-1695, 2023 WL 3480896 (M.D. Pa. May 16, 2023).  In addition, the fact "[t]hat the dogs were in good general health when they were taken into custody

12

was providential; it most certainly is not […] evidence that the home was sanitary." *Tomey*, 884 A.2d 291 at 295.

Having reviewed the reconstructed affidavit with this caselaw in mind, this Court is satisfied that there was more than enough information regarding the unsanitary nature of the dogs' shelter to support the magistrate's probable cause determination. *See Givens v. Wal-Mart Stores, Inc.*, Appeal No. 22-2989, 2023 WL 7144628, at *3 (3d Cir. Oct. 31, 2023) ("it is well settled that district courts may decide the existence of probable cause as a matter of law"). First, the neighbor reported to the dispatcher that even though no one resided in the residence, there were multiple dogs being housed in a dark garage. (Docket No. 15-1 at 3). She and other neighbors never saw the dogs, but regularly heard them barking and screaming from inside. (*Id.*). According to her, Barraclough housed some of his dogs at the Crescent property because he had too many dogs at his own residence in Moon Township. (*Id.* at 3-4). The neighbor raised concerns regarding how frequently Barraclough visited, whether the dogs were fed daily, and if they were even allowed to go outside. (*Id.* at 3). She also stated that a tenant on the top floor of the Crescent property had moved out due to the "noise" and "stench." (*Id.*).

When Galvin visited the Crescent property one week later, his own observations were consistent with the neighbor's account. (Docket No. 15-1 at 3). No one was home and he smelled feces and ammonia emanating from the residence as he stood outside. (*Id.*). Peering through windows, he observed several dogs inside, as well as feces, wood chips, and empty food and water dishes on the floor. (*Id.*). On top of everything, there were only two crates for five large husky-type dogs. (*Id.*).

The revised affidavit details that later that day when Galvin inspected inside the garage and residence, he observed more dogs forced to share a single fenced kennel or crate in other areas of

the house.  (*Id*. at 4).  Galvin was also able to experience the high ammonia levels from inside the garage and house.  (*Id*.).  Galvin recounted that "his eyes and throat began to burn immediately with coughing" when he entered the garage, and that the officers tested the ammonia levels, which "were in the range of fifty (50) parts per million."  (*Id*. at 4-5).  Galvin provided a lengthy description of the potential harm ammonia exposure presents to those in contact with it and insufficient ventilation has been recognized as a threat to an animal's basic needs.  *See Tomey*, 884 A.2d 291 at 295.

Significantly, Plaintiffs do not deny these claims and focus their challenge on the dogs' cleanliness in light of Galvin's observations on the morning of April 30, 2022.  (Docket Nos. 21, 24).  But, the condition of the living areas and the dogs' hygiene *after* Plaintiffs partially complied with Defendants' instructions do not undermine the officers' observations that the dogs' basic needs were not being met before that time.  *See Tomey*, 884 A.2d 291 at 295 (the fact "[t]hat the dogs were in good general health when they were taken into custody was providential; it most certainly is not […] evidence that the home was sanitary.").  All told, the reconstructed affidavit provided the magistrate judge with a fair probability that evidence of a § 5532(a)(2) violation would be found within the residence, supporting the warrant to search it and seize the animals.

As to § 5532(a)(3), the Pennsylvania Superior Court has held that the statute is violated if the person with the duty to care for the animal knowingly fails to provide it with necessary veterinary care.  *See Commonwealth v. Whary*, 281 A.3d 1074 (Pa. Super. Ct. 2022).  On this point, the officers directed Plaintiffs to either schedule veterinary appointments within one week or provide up to date veterinary records by 9:00 a.m. the next day.  (Docket No. 15-1 at 4).  When the officers returned, Plaintiffs did not produce any veterinary records, but they explained to the officers that they had scheduled veterinary appointments.  (Docket No. 14 ¶ 28).  Barraclough also

told the officers that the Doodles were not vaccinated for rabies. (Docket No. 15-1 at 5). Since the officers had observed the dogs being exposed to potentially harmful conditions and Plaintiffs did not provide any evidence of prior veterinary care, there was more than a fair probability that evidence of animal neglect would be found at the Crescent property, including the conditions of the dogs themselves and any evidence—or lack thereof—pertaining to their veterinary care. Moreover, as the U.S. District Court for the Eastern District of Pennsylvania explained in *Kauffman*, a plaintiff demonstrating "an unconditional willingness to cooperate in resolving any potential or perceived problems" or asserting that he "had been treating the animals through services of veterinarians," is "beside the point of the probable cause inquiry." 766 F. Supp. 2d 555 at 570. This Court, like the *Kauffman* court, cannot find "any case law suggesting that providing animal with veterinary care constitutes a defense to charges of animal cruelty under Pennsylvania law." *Id.*

Overall, Plaintiffs' unlawful search and seizure claim hinges on the sufficiency of Galvin's affidavit of probable cause. (Docket No. 14). Even with the false statements eliminated, the Amended Complaint does not challenge enough facts contained in the affidavit for this Court to find it plausible that a substantial basis did not exist to issue the search and seizure warrant. (*Id.*). As such, the Court finds as a matter of law that the reconstructed affidavit provided probable cause for the magistrate judge to issue the warrant to search the residence and seize the animals. *See Gates*, 462 U.S. at 238. Therefore, Defendants' Motion to Dismiss Count I of Plaintiffs' Amended Complaint will be granted and Plaintiffs' claim that the search and seizure was not supported by probable cause is dismissed.

### ii. Plaintiff Yan's Equal Protection Challenge

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from

"deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV § 1.  The Equal Protection Clause "creates no substantive rights." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997).  "Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*  Relevant here, the Equal Protection Clause prohibits selective enforcement of the law based on considerations such as race and national origin.  *See Wren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed. 2d 89 (1996).  A plaintiff may establish a claim of selective enforcement by demonstrating that she was: "(1) treated differently from other, similarly situated persons and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right." *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (quoting *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (internal quotation marks omitted).  A plaintiff "must show that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Jewish Home of E. Pa.*, 693 F.3d at 363 (quoting *Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)) (internal quotation marks omitted).

Yan claims that Galvin charged her with multiple counts of animal neglect without probable cause based on her race and/or national origin.  (Docket No. 14 at 9-11).  For the reasons outlined above, her probable cause challenge must be overruled as this Court has upheld the magistrate judge's finding of probable cause that the animal neglect statute was violated.  *See* § V.A., *supra*.  However, the application and administration of a facially neutral law may still "constitute illegal discrimination between persons if it is applied and administered by public authority with an evil eye and an unequal hand." *Holder v. City of Allentown*, 987 F.2d 188, 197

16

(3d Cir. 1993) (citations and internal quotations omitted).  Here, even if this Court solely focuses on the animal neglect statute as applied to Yan, her equal protection claim fails to state a claim to relief that is plausible on its face.

The only allegations Yan offers to support her selective enforcement claim against Galvin are the comments he made while the search warrant was being executed.  (Docket No. 14 ¶ 64).  Specifically, when Yan requested more time to rehome the dogs, Galvin responded, "I didn't bring you here," and "I don't care what they do in China."  (Docket No. 14 ¶ 34).  Since Yan is Asian and from China, she asserts that these comments show a discriminatory animus that Galvin harbored against her, which was his motivation for obtaining a search warrant and eventually charging her with multiple counts of animal neglect.  (Docket Nos. 21, 24).  This Court will accept as true, as it must at this stage, Yan's assertion that Galvin made these comments.

Yet, Yan fails to identify a single person similarly situated to her—let alone, one that received different treatment.  (*See* Docket No. 14).  To the contrary, Yan alleges that her husband, Barraclough, who is a United States citizen and not of Asian descent, was deprived of the same dogs under the exact same circumstances, and he was also charged with the same animal neglect offenses.  (*Id*. ¶ 45).  All told, the Amended Complaint's failure to allege, much less identify, a similarly situated person who received different treatment from Yan means that there are not enough facts to state an equal protection challenge under § 1983 that is plausible on its face.

Accordingly, Defendants' Motion to Dismiss Count II of Plaintiffs' Amended Complaint will be granted, and Yan's Equal Protection claim against Galvin will be dismissed.

**b.  Leave to Amend**

The Court's next inquiry is whether the dismissal of the federal claims in Plaintiffs' Amended Complaint should be with prejudice or without prejudice.  The United States Court of

Appeals for the Third Circuit has held that in civil rights cases, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).   An amended complaint is futile where it cannot withstand a renewed motion to dismiss.  *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Here, the Court finds that any further amendment of Plaintiffs' claims would be futile given the Court's analysis set forth above.  In addition, Plaintiffs have already amended their complaint once and they have not affirmatively sought leave to file a second amended complaint, nor provided a proposed pleading such that leave to amend may be denied on these grounds as well.  *See U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013).

      **c. Remaining State Law Claims**

Since Plaintiffs' remaining claims are state law tort actions and the parties are not diverse, this Court has discretion in whether it continues exercising supplemental jurisdiction.  As this Court has held previously:

> Section 1367(c)(3) "permits a district court to decline the exercise of supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). "Congress explicitly green-lighted" the dismissal of state law claims in such situations. *Kach*, 589 F.3d at 650. With that said, "[t]he decision to retain or decline jurisdiction over state-law claims is discretionary" and "'should be based on considerations of judicial economy, convenience and fairness to the litigants.'" *Id.* at 650 (quoting *New Rock Assets Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996)) (further citations omitted).

*Pletcher v. Giant Eagle Inc.*, No. CV 2:20-754, 2022 WL 17488019, at *8 (W.D. Pa. Dec. 7, 2022). This case is only in the initial stages and this Court finds that it is in the interests of judicial economy, convenience, and fairness to the parties to decline jurisdiction over the remaining state-

law claims. *Id.*  As such, Counts IV-VI of Plaintiffs' Amended Complaint will be dismissed, without prejudice, to their being refiled in an appropriate state court.

**VI.    CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss [15] is granted.  Counts I and II of Plaintiffs' Amended Complaint will be dismissed, with prejudice.  Since there is no other basis for this Court to assert jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and Counts IV-VI, are dismissed, without prejudice.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: November 6, 2023
cc/ecf:  All counsel of record